Good morning, Your Honors. May it please the Court, Kevin Zeck, Associate with Perkins Coie, on behalf of Appellant Prokop Labs, LLC. Mr. Zeck, where in the record does it show that the level of skill and the art was in dispute? Your Honor, that would be in page 206, and then during appendix page 218, where Prokop Labs challenges the articulation of a reason to combine for one of skill and the art at the time of the invention. Did you propose a certain level of ordinary skill in the art? Your Honor, no. Well, that was my question. Your Honor, the government has failed to even define the art in the beginning. The art here is the art of wrist rest, and inventor David Prokop obtained a patent on a simple yet elegant wrist rest in 1995. He assigned it to his company, Prokop Labs, in 2007, asserted it, and has been involved in serial ex parte re-examination. Is there a law that says the level of ordinary skill in the art, although it's not expressly stated, can be understood based on the content of the prior art references that are submitted and considered in the record? Yes, Your Honor, and to that point, then... And then there's other case law that says... Well, the only... I guess a legal error or reversible error for failure to state a level of ordinary skill, there has to be some reason why the failure to identify the level of skill led us all down the wrong path. And Your Honor, I believe there is in this case. And to go back, the pertinent art here is the art of wrist rest, and the government has only shown that the prior wrist rest disclosed or focused on wrist angulation or positioning and wrist support. They have not thermal therapy, towards other alternative strategies for preventing repetitive motion strain injuries while working on a computer. If they did that, they'd have a 102, right? Yes, Your Honor, but the larger... Wrist rest with a composition of some kind of silicone gel that you heat up, that would be your claim. Your Honor, the skill here in the art shows that the prior art focuses on one zone, wrist support, wrist angulation. The prior wrist rest don't identify that there's a problem with that. David Prokop in 1995 has this aha moment. He realizes that the prior art has oversimplified the pathological cause or the physiopathological cause of repetitive motion strain injuries, at least in terms of wrist rest. And based on that, decides or comes up with a simple yet elegant invention to incorporate alternative strategies into wrist rest. And this court, even after KSR, has identified that the patentable contribution can lie in defining the problem and seeing that there is a non-obvious problem. And the PTO or the government has not shown that the problem David identified was obvious. Is it the same thing you just said to say that there is nothing in the identified prior art that identifies the process of sitting at a computer with your wrist and typing as an opportunity for heat therapy? Sorry, Your Honor, I don't know if I fully understand your question. It's perfectly clear from the wristband art, I forget which, whether that's Gibbs or Gibbons or something. Denochoir. Denochoir is the wristband. That heat therapy for the wrist is in the prior art. It's perfectly clear that the wrist rests prior art talks about what you call angulation. What's not at least perfectly clear, I take it as I'm understanding the argument, was the idea that while people are sitting there with their hands out on the keyboard, that that's an opportunity for applying the heat therapy to the wrist and using, in fact, the very thing that is providing the better angles. Your Honor, I think of this as, at least to my mind, a helpful point. What am I missing? Well, I agree with you that the prior art doesn't describe the opportunity for using alternative strategies. With the prior art, as the PTO has brought to, or the government has shown in this record, discloses only wrist angulation and support. It focuses on it. It teaches one skill in the art at a time to go down that line. And that, if you look at the disclosure in Prokop's patent itself, he shows that every single prior art reference that he describes in his patent, in terms of wrist rest, focuses on this wrist angulation. Everyone is focused on wrist support, wrist angulation. He's seeing this as this aha moment. They've missed it. He's defined the problem in a new way. He said, they've gone after the pathophysiological cause as a mechanical cause, a mechanical failure. Just this. This is all that matters when you're dealing with a wrist rest. And he says, well, no, there's more to it. And yes, once you've realized that there's more to it, and you're bucking the conventional teachings of the prior art, then perhaps this is simple, just familiar, known art elements in the art that are combined together. And yes, that may be the case. But no one in the wrist rest prior art, prior to David, as the government has been unable to show, focused on anything other than wrist angulation and support. David defined the problem. I understand the agency's position on this. The real way to define the issue is trying to understand how to address carpal tunnel syndrome, how to deal with that problem, how to alleviate that problem. And when you're typing on a keyboard, there was this Danish bar solution of having a wrist pad, right, while you're typing. And inside that is some kind of silicone gel, some kind of gel. Could be, Your Honor. Right. That's what it discloses. Then there's Gibbs. Gibbs talks about how do you deal with carpal tunnel syndrome and a bunch of other related injuries. Well, you have some heating pad or cooling pad, right? And also, likewise, that material inside that pad is something that you can heat or cool. Is the gel just like the gel of Danish bar is a gel? So what we have here are two different teachings to deal with carpal tunnel syndrome. One is a wrist rest pad made of gel. Another one is a wrist pad made of gel that you can heat and cool. And so they're both directed to dealing with the same overall issue, to help someone with carpal tunnel syndrome. Before you answer, my brother, it might be a good idea for you to listen and wait until the court stops talking before you start talking. Yes, Your Honor. And sometimes that talks slowly, so I understand. Well, as a sort of a backdrop to my answer here, this court in Mint v. Deason Watson has said that objective consideration of simple technology is often the most difficult because once the problem and the solution appear together in the patent disclosure, the advance seems self-evident. And what we have is we've got to step back in time to 1995 before the problem David identified was known. And you have to define what that problem is. But the problem as shown in the prior is wrist angulation and support as solving carpal tunnel syndrome. On a broader level, yes, there are disclosures of heat therapy, teaching reduced inflammation or pain relief for carpal tunnel syndrome or for other types of injuries in, for example, Gibbs. I suppose you could technically use the Gibbs wrist pad device, wear it around your wrist while you're typing. Well, the PTO hasn't, the government hasn't shown that first and foremost and Gibbs in and of itself is a stretch, Your Honor. It is a temperature thermal control pack meant to fit in a suitcase, according to Gibbs, a small suitcase. It mentions only in passing a gel layer that is thermally conductive and it is an outer layer. Well, there's a figure that shows a pad that wraps around your wrist. And that's all it shows, a couple of lines on a piece of paper. Well, I could probably fit that in my coat pocket. I wouldn't need a suitcase for that. And the main temperature, the main cause of a temperature application there is the temperature control liquid, not the gel. Yes, there's technically a thermally conductive gel, but above and beyond that Gibbs doesn't disclose microwave ability. It only discloses, and then you have to go out and get a third reference for this seemingly simple invention. So the government's really stretching here. It's pulling whatever it can together to try to invalidate these claims with a microwavable limitation. And in the past re-examination, the government conceded that Denochoir and Gibbs did not render obvious claims with a microwavable, gelatinous, resilient member or means. While it's busy pulling all those things together, who's the person of skill on the art? The person, an appellant would contend that the person of skill in the art is one who is designing wrist rest as of 1995, your honor. And that person based on... That could be anybody as long as they have a pencil on this paper. And the people who were doing that focused on wrist rest, angular wrist angulation and support. The government has not shown otherwise. David again had this aha moment. He realized that they got it wrong. They've oversimplified the pathophysiological cause of repetitive motion strain injuries while you're working on a computer just to be in comfort and angulation. And he incorporated alternative strategies. And the government stretches to try to invalidate this and use his hindsight. In fact, the government hasn't conducted more than a cursory analysis in its most recent re-examination decision. And you see that's in the section of Danischvar, Gibbs, and Gibbon, which is no more than a page and a half, the Joint Appendix pages five and six. And it's less than two paragraphs of consideration at pages 11 and 12 of Danischvar and Francis Junior. And what if we determine that the second board decision incorporated by reference all of the analysis and findings in the first board decision? Your honor, it still is an insufficient analysis. They have not articulated a sufficient reason to combine these references. They've merely said, it's obvious to take an advantage from one prior element that's out here and combine it with others. But the mere identification in the prior art of the elements of the claims invention is insufficient to defeat patentability. And that's something that's been stated in KSR and in other precedents that your court has issued, your honor. So then just curious, what would the PTO needed to have found to make your invention obvious? They would have needed to have found that one of skill in the art of wrist rest at that time would have realized that the problem David identified was obvious. And they have not done so. They've not shown that, your honor. David has this simple yet elegant invention. And again, we have to step backwards in time. Right. I'm just trying, you're saying there's a hole in the evidence and I'm just trying to ask you what, if that piece of evidence existed, what would that piece of evidence look like? That piece of evidence, it would look like a disclosure in a wrist rest art stating more broadly that something beyond angulation and support could be usable to treat, to correct the problems of repetitive motion strain injuries while working at a computing device. When you say competitive motion strain injuries, do you absolutely equate to that with carpal tunnel syndrome? So that, I guess the question is, was there anything in any prior art, forget about whether it's wrist rest or not, that said heat therapy to the wrist can help carpal tunnel syndrome? I believe that there is nothing in the record, your honor, except for what Mr. Prokop said about relief of pain, specifically related to repetitive motion strain injuries. I believe that the passing reference in Gibbs only concerns putting on the pad for treatment of carpal tunnel syndrome. I think it's only a couple of sentences and refers to figure 10. Uh, and there's nothing in Gibbons that directly talks about the use of- But Gibbs does talk about using the pad in figure 10 for this problem. For carpal tunnel syndrome, but for, it refers to it along the lines of also athletic injuries. It's not discussing it in the context of wrist rest art and the government hasn't contended that Gibbs is a wrist rest. Uh, and your honor- Your time's just about up. Yes. So the other point here that I have not yet made is that they failed, that the PTA, PTAP has failed to conduct the proper analysis, the required analysis, and that this court, and that's an independent grounds for reversal. The government should not be allowed to flop required procedures and KSR holds that the analysis of the grant factors and specific articulation of a reason to combine is necessary to ensure fair consideration of patentability under section 103. Your honors, Procop Labs respects the request that either the court remand the PTAB to allow the PTAB to correct its error or if remand is not necessary to reverse. Thank you. Good morning, your honors. May it please the court. I'd like to begin by addressing a few of the points my friend across the aisle has tried to raise. The first thing I'd like to do is respond to the arguments regarding the level of skill in the art. I think this court has recognized that Mr. Procop has not made an issue of what the level of skill in the art is and in that circumstance, the court is, I'm sorry, the tribunal, the board is not required to make an issue of skill in the art if it's not an issue. But he did make it an issue, right? He raised it in his appeal brief. Not to the board. No, your honor. He raised it before this court. He attempted to make it an issue before this court, but it wasn't raised as an issue before the examiner or before the board. Additionally, some of his level of skill in the art argument sounds in analogous art theory. And to the extent that it does, how other people would have or were treating carpal tunnel syndrome and other pertinent, all analogous art. Can I ask, I guess, I actually took my question to Mr. Zeck to be saying something quite like what I take to my mind is his core point about the aha moment, recognizing a problem. And maybe I'm not articulating it well. But the whole in the board's analysis, and let's talk about that, that I'm having some trouble with is I don't see anything that says, you know, the opportunity presented by somebody sitting at a computer hours on end to get heat therapy that would be that we know the wristband for that works, but there's this opportunity for providing that therapy sitting right in front of the person, in fact, directly under his wrist or her wrist. Why is that not in Mr. Zeck's language, an aha moment, or in, I guess, more traditional language, isn't that a significant gap that the board and the examiner simply have not filled by saying, here's why somebody, a relevant, ordinary, skilled artisan would have seen that opportunity. I tend to agree. Once you see the opportunity, everything else is there. But nobody seems to have seen the opportunity. Your Honor, it's the way that patent law works. The Supreme Court said in KSR that if you merely combine familiar elements, and here we have familiar elements for the treatment and prevention of carpal tunnel syndrome. One is heat therapy. I'm sorry, the Supreme Court did not say if you merely combine. I'm sorry, I didn't finish. You have to have a reason, a reason that an ordinarily skilled artisan would want to combine those, would see the benefit of combining them. Yes, Your Honor. I guess I would like to get to that. I think there's sort of two points in there. To fully express what the Supreme Court said, if you take familiar prior art elements, and that's what we have here, and combine them to get merely predictable results, which we don't have any evidence of any unexpectedly superior results here, that that is obvious. And the reason that one of ordinary skilled art would have wanted to combine. That just cannot be right. Most mechanical things are made of off-the-shelf components, and once you see that you are to combine them in this particular way, you can predict the results. It's the seeing of the way, the seeing of the benefit of the combination that distinguishes one thing from the other. And the seeing of the benefit, the examiner made findings would have been obvious, and the reason for that is, is that even if we accept the sort of narrow interpretation of who a person of ordinary skilled art is, a person designing wrist rests, and this person is looking to treat or prevent carpal tunnel syndrome, that person would, if they were just confining themselves to the wrist rest world, I suppose that person, to that same field, that person would say, oh, angulation of the wrist is better, maybe I'll just improve angulation. But the reality is, is that if you're working in a field of developing wrist rests to prevent or treat carpal tunnel syndrome, you know, you would logically say, well, how are other people outside the wrist rest community treating or preventing carpal tunnel syndrome? And how they're doing that is with heat. So I'll apply that. Where are the best places in either the examiner's rulings or either the 2014 or 2011 board rulings that focus very specifically on that? Okay, I'm going to break that into two parts. In the board's earlier decision, they talked about the need to just, sorry, the motivation to combine heat and wrist angulation. And if we look to the earlier decision at A-249, we see the board talks about all the advantages for the, on page 249, we see the board discussing all the advantages that Gibbs lays out or evidences of that was notoriously well known to use hot heat, heating pads, ice packs, and frozen gels, and cold to treat carpal tunnel syndrome. Then if you follow the board's analysis over to A-250, you'll see that a person of ordinary skill in the art would have been recently expected this modification would provide Dinesh Farr's pad with an enhanced capability of preventing or alleviating the symptoms of carpal tunnel syndrome, i.e. not only provide proper alignment of the wrist during typing, but also provide the pad with the additional capability of being used as a pad for heating or cooling the injury, as it was notoriously well known in the art. Both before that board in that earlier proceeding and before the board in this proceeding, Procop's only argument was this cursory three-line argument that they presented in their appeal brief to the board, which you can see at, you can see it at page 206 as it relates to Dinesh Farr and Gibbs and page 219 as it relates to Dinesh Farr, Gibbs, and Gibbons. And what they say here is that the problem, they just assert that the problem with this shared analysis, shared advantage rather analysis that the board uses is that it wouldn't work under KSR, that inventions will always and necessarily those that share the same advantages will be obvious. Well, in fact, that is the law. The Supreme Court said when you have two things that are very well known in the art and you combine them to get only predictable results, that's obvious. That's what the Supreme Court has said. And if you want to, the way that you make it unobvious is you show secondary considerations of non-obviousness such as unexpectedly superior results. There is no evidence of unexpectedly superior results here. And this was the criticism that was made before the board in this re-examination. And the court answered that in its earlier decision when it discussed the motivation to combine. And it laid out that test that appears in KSR. And PROCOP has done nothing to disturb that. I mean, even if we were to just, it's not as if Gibbs just cites something that every person probably in this room doesn't know. People have been using hot and cold to treat and prevent injuries for millennia. Can I ask you, does this patent expire in five months? You know, I haven't done the math on that. It expires shortly, Your Honor, and I can determine that. 20 years from May 31st, 1995. That's correct. And importantly, this patent issue before KSR. Really, to just reiterate, PROCOP's wrist rest is a very simple invention that at core combines two known ways of treating and preventing carpal tunnel syndrome. Dinashkar does it by promoting proper wrist alignment. Gibbs does it by applying hot and cold. In the earlier proceeding, the board made the very unremarkable finding that those who still are would have been motivated to combine these two elements to reap the shared advantages. I mean, their shared advantages they have in treating carpal tunnel syndrome. In the present re-examination, the issue is whether those who are still in the art would have been further motivated to incorporate the electromagnetic additive of Gibbon or Francis into Dineshkar's wrist rest, which the board found was identical to the claimed wrist rest except for the application of heat and cold. And the examiner found that they would be motivated and the board agreed. And the examiner's reasoning can be found in the final office action at page A-130 and again at A-140 and A-144, which is simply that both Gibbon and Francis disclose that prior art ways of heating silicone gel for the use of the compress are cumbersome, dangerous, they present hazards with spilling, that there are all these assorted problems with those prior art ways, and that heating the gel by microwaving is the best way to go. In fact, these sorts of gels have been around since 1975. If your honors have no further questions, I would like to end with by saying that Procop hasn't shown no reversible error in the board's decision. The findings that are required under Procop are all there in the examiner's decision and in the board's decision. If there are no more questions, I'll end here. Thank you. Zach, you used up all your time. I'm going to give you one minute. Your honor, the government has flipped the obviousness analysis on its head. It is looking to identify the claimed elements in the prior art, the advantages associated with that, and then using those to provide the motivation to combine. This is impermissible under the law. This court has held and been to be decent, Watson, that not with any KSR, you can have a patentable contribution in the definition of the invention, even if it leads to no more... Of the problem. I'm sorry? Of the problem. Of the problem, sorry. Even if it leads only to the combination of familiar prior art elements in known ways, we need to know more than predictable results. And above and beyond that, your honor, your honors, the government has just failed to do any sort of analysis with Dennis Farr and Francis Jr. in his decision. It should not be allowed to just issue opinions, deciding right, without following required procedures meant to ensure a fair consideration of obviousness under Section 103. Thank you, your honors. Thank you, counsel.